**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KEYCORP, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **CIVIL ACTION NO. 3:16-cv-2930** |
| **GIGI'S HOLDINGS, LLC AND GIGI'S** | § | |
| **FRANCHISING, LLC n/k/a A&G** | § | |
| **FRANCHISING, LLC,** | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff KeyCorp, LLC ("KeyCorp") files its Original Complaint against Defendants Gigi's Holdings, LLC and Gigi's Franchising, LLC n/k/a A&G Franchising, LLC ("Defendants") in accordance with the Federal Rules of Civil Procedure, and respectfully shows the Court as follows:

### I.
### PARTIES

1. Plaintiff KeyCorp, LLC is a Delaware limited liability company and a citizen of the state of Texas by virtue of its members' citizenship.

2. Defendant Gigi's Holdings, LLC ("Holdings") is a Delaware limited-liability company registered in the state of Texas and may be served with process by serving its registered agent, National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

3. Defendant Gigi's Franchising, LLC n/k/a A&G Franchising, LLC ("Franchising") is a Tennessee limited liability company with its principal place of business in Tennessee. Franchising does not have a registered agent for service of process in the State of Texas. Service

of process on Franchising may be made according to the laws of the State of Texas by serving the Secretary of State.

## II.
## JURISDICTION AND VENUE

4. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because KeyCorp and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000, exclusive of interest and costs. KeyCorp is a citizen of Texas for purposes of diversity jurisdiction because its members are citizens of Texas. Gigi's Holdings, LLC is the sole member of Gigi's Franchising, LLC n/k/a A&G Franchising, LLC, and Gigi's Holdings, LLC's members are Alan Thompson and Gina Butler, who are citizens of Tennessee, and For 6, LLC, whose members are all citizens of Tennessee.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## III.
## CONDITIONS PRECEDENT

6. All conditions precedent have been performed or have occurred.

## IV.
## FACTUAL BACKGROUND

7. On May 3, 2016, KeyCorp and Defendants entered into an Asset Purchase Agreement (the "Agreement"). Defendants were the franchisors to approximately 63 United States franchisees operating approximately 92 cupcake stores in the United States, and the owners of various intellectual property rights, cash, and other assets used to operate such business. Defendants sold their assets to KeyCorp in exchange for $6 million, paid in $3.6 million cash and a note receivable in the amount of $2,400,000.00.

8. In the months prior to closing this transaction, KeyCorp expended hundreds of thousands of dollars in conducting its legal and business due diligence. This process took several months and required KeyCorp to retain additional management personnel and industry experts and advisors. KeyCorp's assembled team in turn reviewed, evaluated and relied on the information and materials furnished by Defendants, and as documented in the Asset Purchase Agreement and Disclosure Schedules.

9. However, after the transaction closed, KeyCorp discovered that Defendants had made several material misrepresentations to KeyCorp with the intent and purpose of inducing KeyCorp into signing the Agreement and/or tendering a purchase price far in excess of what KeyCorp would have paid absent Defendants' misrepresentations. KeyCorp looked to and relied upon these misrepresentations in its negotiations and its decision to execute the Agreement. It was only after KeyCorp signed the Agreement and the parties' transaction closed that KeyCorp discovered Defendants' deception.

10. Prior to filing suit, KeyCorp raised these issues with Defendants and invoked Keycorp's contractual right to indemnification under the Agreement, which obligates Defendants to indemnify KeyCorp for any and all losses suffered, sustained, incurred or required to be paid by reason of any false representation or warranty made by Defendants, any failure to perform under the Agreement, any Excluded Liability,[1] in addition to other circumstances. Defendants have failed to respond to KeyCorp's claims for indemnification, thus forcing Keycorp to file this lawsuit.

---

[1] Unless otherwise stated or defined herein, capitalized terms shall have the same meaning as those used in the parties' Agreement.

**PLAINTIFF'S ORIGINAL COMPLAINT** Page 3

## A. DEFENDANTS MISREPRESENTED THEIR OUTSTANDING OBLIGATIONS AND LIABILITIES

11. Defendants represented in Section 3.4(b) of the Agreement that, except to the extent (and not in excess of the aggregate amounts of liabilities) reflected in the Recent Balance Sheet or as disclosed on Schedule 3.4(b) of the Agreement, Defendants do not have and are not aware of any liabilities or obligations of any nature, whether absolute, accrued, unmatured, contingent or otherwise, or any unsatisfied judgments or any unusual or extraordinary commitments other than trade payables and accrued expenses incurred in the ordinary course of business since the date of the Recent Balance Sheet.

12. However, since the Closing, KeyCorp has been approached by several entities seeking payment for obligations and/or commitments incurred by Defendants, not KeyCorp, prior to the date of the Recent Balance Sheet, which were not otherwise disclosed to KeyCorp. More specifically, several of Defendants' suppliers have approached KeyCorp demanding payment for inventory that was ordered prior to the Effective Time of the Agreement such that the referenced obligations, to the extent otherwise valid, should be borne by Defendants, not KeyCorp.

13. These suppliers include FSI, Webb Mason, McCowat Mercer, and PFG. Combined, these suppliers have approached KeyCorp seeking in excess of $264,420.00 for inventory that Defendants ordered prior to Closing and for which Defendants are obligated to pay. At no point prior to or during the course of KeyCorp's negotiations with Defendants or prior to KeyCorp's execution of the Agreement did Defendants disclose these outstanding claims for payment.

14. Other sections of the Agreement require Defendants to cover these claims for payment as well. For example, pursuant to Sections 6.1(c) and 6.1(g) of the Agreement,

Defendants are responsible for all Excluded Liabilities and all events that occurred, conditions that existed, services that were performed (or were due to have been performed), or the ownership or operation of the Business prior to the Effective Time of the Agreement. Further, pursuant to Section 2.4(a)(ii) of the Agreement, KeyCorp assumed only the current liabilities and accounts payable of Defendants that were included in the Closing Net Working Capital, which was included in the Agreement as Schedule 1.1. Defendants failed to include any liabilities to FSI, Webb Mason, McCowat Mercer, and PFG in the Closing Net Working Capital and, as a result, misrepresented to KeyCorp that such liabilities did not exist. As such, and pursuant to Sections 2.4(a)(ii), 6.1(c), and 6.1(g) of the Agreement, Defendants are responsible for any amounts due and owing to FSI, Webb Mason, McCowat Mercer, and PFG, which remain outstanding.

15. On or about September 21, 2016, KeyCorp sent Defendants an Indemnification Notice requesting that Defendants indemnify KeyCorp and otherwise remit payment to and resolve the identified suppliers' claims for payment. Despite such notice and request, Defendants have refused to honor their obligations under the Agreement and are thus in breach.

**B. DEFENDANTS MADE MISREPRESENTATIONS REGARDING THREATENED FRANCHISEE CLOSURES, TERMINATIONS, AND TRANSFERS**

16. Pursuant to Section 3.23 of the Agreement, Defendants also represented that "[a]ny information furnished to [KeyCorp] by or on behalf of [Defendants] is or when furnished will be true, correct and complete in all material respects." Further, Defendants represented that such information would state "all material facts" to make the statements therein not misleading.

17. With respect to Section 3.17(m) of the Agreement, Defendants represented that, except as set forth in Schedule 3.17(m), within the 24 months prior to the date of the Agreement,

no Franchisee had threatened in writing or orally, to close a store or leave the franchise system. In Schedule 3.17(m), Defendants disclosed a total of 5 locations.

18. Since signing the Agreement, KeyCorp has learned that Defendants knew of numerous other locations that had threatened to close or leave the franchise system prior to the parties executing the Agreement As of the date of this filing, KeyCorp has learned of *32 locations* that have threatened to close or leave the franchise system, *which is six times the number that Defendants disclosed*. In other words, despite assurances to the contrary, Defendants furnished information with respect to threatened store closures that was not "true, correct and complete in all material respects," and otherwise did not state all material facts required to be stated therein or necessary to make the statements therein not misleading.

19. Defendants' misrepresentations regarding the threatened store closings have caused KeyCorp damages including a loss of current and future revenue. KeyCorp reasonably relied on Defendants' representations regarding the number of threatened store closures. Had KeyCorp been aware of additional threatened closures prior to Closing, KeyCorp would not have completed the transaction using the same valuation methodology that was used to calculate the purchase price in the Agreement, and very well may not have completed the transaction at all. KeyCorp's damages as a result of Defendants' misrepresentations regarding the health of the franchise system and threatened store closures or transfers exceed $1.4 million.

C. **DEFENDANTS MADE MISREPRESENTATIONS REGARDING THE NUTRITIONAL INFORMATION SET FORTH ON THEIR LABELS**

20. Section 3.17(w) of the Agreement provides that Defendants used commercially reasonable methods compliant with applicable Law to assess the nutritional and caloric value of its products, and the nutritional information maintained by Defendants with respect to the products is accurate to a commercially reasonable degree.

21.     After Closing, KeyCorp learned that Defendants misrepresented their compliance with applicable Law related to the nutritional information.  Defendants misrepresented that they were well prepared to assure compliance with Food and Drug Administration ("FDA") menu-labeling laws with effective dates requiring substantial lead-time, research, and analysis, and Defendants failed to properly assess the nutritional and caloric value of their products.  Defendants' misrepresentations subject KeyCorp to significant potential liability and will result in KeyCorp having to spend a significant amount of money to properly assess the nutritional and caloric values of the products and to come into compliance with applicable FDA laws.  Certainly had KeyCorp known the truth of Defendants' non-compliance, it would have negotiated a different deal and/or chosen not to enter into any transaction with Defendants.

## V.
## PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

**A.     BREACH OF CONTRACT[2]**

22.     KeyCorp hereby incorporates for all purposes the allegations set forth in paragraphs 1-21 above.

23.     The elements of a breach of contract claim under Delaware law are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) damages to the plaintiff resulting from the defendant's breach.  *See Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011) (*WaveDivision Holdings, LLC v. Millennium Digital Media Systems, L.L.C.*, Civ. No. 2993–VCS, 2010 WL 3706624, *13 (Del. Ch. 2010)).

24.     KeyCorp and the Defendants entered into the Agreement on May 3, 2016.  Defendants represented in Section 3.4(b) of the Agreement that, except to the extent (and not in

---

[2] Section 9.9 of the Agreement specifies that the Agreement shall be construed, enforced, and governed by Delaware law.

excess of the aggregate amounts of liabilities) reflected in the Recent Balance Sheet or as disclosed on Schedule 3.4(b), they did not have and were not aware of any liabilities or obligations of any nature, whether absolute, accrued, unmatured, contingent or otherwise, or any unsatisfied judgments or any unusual or extraordinary commitments other than trade payables and accrued expenses incurred in the ordinary course of business since the date of the Recent Balance Sheet.  Prior to Closing, Defendants ordered inventory from FSI, Webb Mason, McCowat Mercer, and PFG, but they failed to disclose these obligations or liabilities in the Closing Net Working Capital.  As a result, Defendants misrepresented to KeyCorp that such obligations did not exist.  Pursuant to Sections 2.4(a)(ii), 6.1(c), and 6.1(g) of the Agreement, Defendants are responsible for any outstanding amounts owing to FSI, Webb Mason, McCowat Mercer, and PFG.  Despite written notice, Defendants have failed to honor their obligations to these suppliers.  As a result, Defendants have breached the Agreement and have caused KeyCorp damages in excess of $264,420.00 insofar as demand is being made on KeyCorp to pay these amounts.

25.     Defendants also breached Section 3.17(m) of the Agreement by misrepresenting the number and identities of the franchise stores that had threatened to close or leave the franchise system within the 24 months prior to Closing.  Defendants' failure to inform KeyCorp of the additional franchise stores that threatened to close also constitutes a breach of Section 3.23 of the Agreement, which requires Defendants to disclose all material facts and to furnish information to KeyCorp that is true, correct, and complete in all material respects.  Defendants' misrepresentations were unquestionably material because had KeyCorp known the truth – that 32 or more stores had threatened to close or leave, rather than just 5 – it would have negotiated a substantially different (*i.e.*, much lower) purchase price, or not done the deal at all.

26. Additionally, Defendants breached Section 3.23 by providing inaccurate information with respect to Defendants' compliance and long-lead time preparation for compliance with FDA menu-labeling laws and nutritional and caloric values of the products. This conduct was also a breach of section 3.17(w) of the Agreement, which requires that Defendants use commercially reasonable methods compliant with applicable Law to assess the nutritional and caloric value of the products and the nutritional information maintained by Defendants with respect to the products be accurate to a commercially reasonable degree. Defendants provided inaccurate information regarding the nutritional and caloric values of the products and their compliance with FDA laws. KeyCorp has been damaged as a result of Defendants' breach and has been forced to incur significant expenses associated with properly assessing the nutritional and caloric values of the products and coming into compliance with FDA laws. Furthermore, Defendants have subjected KeyCorp to potential liability as a result of the inaccurate nutritional and caloric information, which may lead to additional damages. Likewise, had KeyCorp known the truth about Defendants' non-compliance it would have negotiated a different transaction price, or chosen not to do the deal at all.

**B.     FRAUDULENT INDUCEMENT**

27. KeyCorp hereby incorporates for all purposes the allegations set forth in paragraphs 1-26 above.

28. The elements of a fraud claim in Texas are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

29. Defendants knowingly misrepresented and/or omitted several material facts prior to the execution of the Agreement on May 3, 2016 with the intent to induce KeyCorp into entering the Agreement and/or paying a price that greatly exceeds what KeyCorp otherwise would have been willing to pay had it known the truth.

30. As set forth above, Defendants knowingly withheld material information or made affirmative misrepresentations regarding facts that Defendants knew, or certainly should have known, were material to KeyCorp's price negotiations as well as its ultimate decision to enter into the transaction with Defendants. In particular:

(a) Defendants knowingly and intentionally misrepresented the scope, size, and nature of its outstanding liabilities and obligations with respect to particular suppliers (*e.g.*, FSI, Webb Mason, McCowat Mercer, and PFG);

(b) Defendants knowingly and intentionally misrepresented and withheld material information pertaining to the true number and identities of franchisee stores that had threatened, prior to Closing, to close or leave the franchise system;

(c) Defendants knowingly and intentionally misrepresented and made other, false assurances regarding the background checks and vetting processes implemented with respect to individual franchisees by specifically failing to obtain proper notification/release for performing background checks; and

(d) Defendants knowingly and intentionally misrepresented and withheld material information pertaining to Defendants' purported compliance and preparation for

compliance with FDA menu-labeling Laws and Defendants' assessment of the nutritional and caloric value of its products.

31. Defendants made the foregoing misrepresentations and material omissions with the knowledge, intent, and purpose of inducing or otherwise causing KeyCorp to execute the Agreement and to consummate the resulting transaction by paying an amount far in excess of what KeyCorp would have paid had Defendants not made such misrepresentations and omissions. Alternatively, Defendants made such misrepresentations recklessly without any knowledge of the truth. Defendants also directly benefitted from such misconduct and unlawful behavior by receiving monies and reaping a profit that it otherwise would not have received absent its fraud.

C. **NEGLIGENT MISREPRESENTATION**

32. KeyCorp hereby incorporates for all purposes the allegations set forth in paragraphs 1-31 above.

33. In addition and in the alternative to its fraudulent inducement claim, KeyCorp also asserts a claim for negligent misrepresentation against the Defendants.

34. Under Texas law, a claim for negligent misrepresentation consists of four elements: (1) defendant makes a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) defendant supplies "false information" for the guidance of others in their business; (3) defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) plaintiff suffers pecuniary loss by justifiably relying on the representation. *See Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005)

35. Defendants had an affirmative duty to provide complete and accurate information with respect to the Agreement and its negotiations with KeyCorp. Defendants breached this duty by negligently furnishing KeyCorp with false or incomplete information concerning: (i) the extent and amount of Defendants' outstanding obligations vis-à-vis its suppliers; (ii) the number of franchisees that had threatened to close or otherwise withdraw from the franchise system; (iii) Defendants' purported investigation and vetting of the franchisees' backgrounds; and (iv) the Defendants' and the products' compliance with applicable FDA Laws and the accuracy of the nutritional and caloric information for the products.

36. Defendants failed to exercise reasonable care with respect to these misrepresentations and omissions, and KeyCorp justifiably relied on them in entering into the Agreement and negotiating the price paid. As a result of Defendants' negligent misrepresentations, KeyCorp has suffered damages by agreeing to Agreement terms to which it otherwise would not have agreed to but for Defendants' misrepresentations.

### D. DAMAGES

37. As a result of Defendants' misconduct, KeyCorp has suffered the following injuries and damages:

(a) Actual damages;

(b) Consequential and incidental damages

(c) Lost profits;

(d) Lost earnings;

(e) Loss of earning capacity;

(f) Punitive damages;

(g) Attorneys' fees and costs; and

(h) Prejudgment and postjudgment interest.

## VI.
## **PRAYER**

WHEREFORE, KeyCorp prays for a judgment against Defendants for actual, consequential and incidental damages in an amount to be determined at trial, as well as lost profits, lost earnings, loss of earning capacity, punitive damages, prejudgment and postjudgment interest, and attorneys' fees and costs. KeyCorp further prays for all other relief the Court deems appropriate.

    Respectfully submitted,

*/s/ C. Scott Jones*

**C. Scott Jones**
  State Bar No. 24012922
  sjones@lockelord.com
**Alexandra A. LoCasto**
  State Bar No. 24087938
  alocasto@lockelord.com
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
(214) 740-8000 (telephone)
(214) 740-8800 (facsimile)

**ATTORNEYS FOR PLAINTIFF KEYCORP, LLC**